JUDGE ABRAMS

Sanjay Wadhwa
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0181

13 CV 8324

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
NOV 21 2013
U.S.D.C. S.D. N.Y.
CASHIERS

SECURITIES AND EXCHANGE COMMISSION,

           Plaintiff,

-against-

SAM MIRI,

           Defendant.

**COMPLAINT**

ECF CASE

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendant Sam Miri ("Miri" or the "Defendant"), alleges as follows:

## SUMMARY

1. This insider trading case involves the tipping of inside information by a corporate insider to a hedge fund professional. During 2008, Miri obtained material nonpublic information from his employer, Marvell Technology Group, Ltd. ("Marvell"), and tipped that information to Ali T. Far ("Far"), the co-founder of the hedge fund advisory firm Spherix Capital LLC ("Spherix Capital").

2. Based on the inside information that Miri provided, Far executed trades in Marvell securities on behalf of Spherix Capital hedge funds and generated approximately

$680,000 in illicit profits. To compensate Miri for providing Marvell information, Far arranged for Spherix Capital to pay Miri approximately $10,000.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

3. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)].

4. The Commission seeks permanent injunctions against the Defendant, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; disgorgement of ill-gotten gains, including profits and/or avoided losses, arising from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest; and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. In addition, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], the Commission seeks an order barring Miri from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]. The Commission also seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

6. Venue lies in this Court pursuant to Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and 78aa]. Certain of the acts, practices,

transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York. For example, Spherix Capital hedge funds used a New York, New York-based prime broker for clearing and settling the illegal trades of Marvell securities described in this Complaint. In addition, during the period relevant to this Complaint, Marvell's shares of common stock were quoted on the NASDAQ, which is headquartered in New York, New York.

## DEFENDANT

7. **Miri,** age 43, resides in Palo Alto, California. During the period relevant to this Complaint, Miri was an employee in Marvell's communications division.

## OTHER RELEVANT INDIVIDUALS AND ENTITIES

8. **Far,** age 51, resides in San Jose, California. During the period relevant to this Complaint, Far was a managing partner, portfolio manager and co-founder of Spherix Capital.

9. **Spherix Capital** was a Delaware limited liability company. During the period relevant to this Complaint, Spherix Capital was an unregistered hedge fund investment adviser based in San Jose, California. Spherix Capital is presently defunct.

10. **Marvell** is a Bermuda corporation headquartered in Santa Clara, California. Marvell is a global semiconductor provider of microprocessor integrated circuits. Marvell's securities are registered with the Commission pursuant to Section 12(b) of the Exchange Act and its stock trades on the Nasdaq under the symbol "MRVL."

## FACTS

### The Insider Trading Scheme

11. During 2008, Miri, who was then employed as a director of distribution in Marvell's communications division, obtained, among other information, detailed data concerning Marvell's sales revenues and profitability, as well as information concerning the company's internal predictions of its future financial performance.

12. Marvell considered this information to be confidential and the company had policies and procedures to prevent its unauthorized dissemination. Marvell's Code of Ethics, for example, stated that "[i]t is illegal to buy or sell securities using material information not available to the public" and made clear that Marvell employees were prohibited from using non-public Marvell information for their own personal gain, or the gain of their relatives or friends (including engaging in securities transactions based on such information).

13. In addition, Marvell's Insider Trading Policy explicitly stated that no employee "shall disclose ('tip') material nonpublic information to any other person" and instructed employees that "[i]f you receive inquires about the Company from securities analysts… you should decline comment, and you should direct such persons to Marvell's Chief Financial Officer."

14. Notwithstanding his obligation to protect the confidentiality of Marvell's information, Miri repeatedly tipped Far, a portfolio manager at the hedge fund advisory firm Spherix Capital, about Marvell's financial performance and internal financial projections in advance of such information being disseminated to the public at Marvell's regularly scheduled quarterly earnings announcements.

15. In exchange for these tips, Far arranged for Spherix Capital to pay Miri approximately $2,500 per quarter pursuant to a "soft dollar" arrangement.[1]

16. On at least one occasion, Far used the information that Miri provided him to profitably trade Marvell securities on behalf of Spherix Capital hedge funds.

17. On or about May 27, 2008, Miri told Far that Marvell, which had been utilizing a succession of interim chief financial officers, was planning to announce the appointment of a permanent chief financial officer. Miri also provided Far with confidential financial information that the company would be announcing at its upcoming earnings announcement, scheduled to take place on May 29, 2008.

18. Based on this information, Far caused Spherix Capital hedge funds to purchase approximately 300,000 shares of Marvell common stock on May 27 and May 29, 2008.

19. After the close of regular market trading on May 29, 2008, Marvell announced its quarterly financial results, including quarterly revenues of $804 million, which were significantly greater than market analysts expected. As Miri had previously informed Far, Marvell also announced the appointment of a permanent chief financial officer.

---

[1] "Soft dollars" are created when an investment firm causes its trading activity to be directed through a designated broker-dealer, and, in return, the broker-dealer credits the investment firm with a portion of the commissions or fees from the executed trading activity. These credits can then be used to pay for goods and services consumed by the investment firm, such as third-party research. The investment firm can direct the broker-dealer to pay a third-party research consultant directly (thereby utilizing the soft dollar credits it has accumulated with the broker-dealer).

20. Following these announcements, the price of Marvell stock, which had closed at $14.08 per share on May 29, jumped approximately 23% and closed at $17.36 per share on May 30, 2008.

21. As a result of the illegal trades noted above, Spherix Capital hedge funds realized approximately $680,000 in illicit profits.

## CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

22. The Commission realleges and incorporates by reference paragraphs 1 through 21, as though fully set forth herein.

23. The information concerning Marvell's May 29, 2008 earnings announcement and appointment of a permanent chief financial officer that Miri provided to Far was material and nonpublic. In addition, the information was considered confidential by Marvell, the company that was the source of the information, and Marvell had policies and procedures protecting confidential information.

24. Miri learned the information that he tipped to Far as a result of his employment at Marvell. Miri knew, recklessly disregarded, or should have known that he owed a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to keep the information confidential.

25. Miri tipped Far the material nonpublic information described herein in knowing or reckless breach of the fiduciary duty, or obligation arising from a relationship of trust and confidence, that Miri owed Marvell, and did so with the expectation of receiving a benefit.

26. By virtue of the foregoing, Miri, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

27. By virtue of the foregoing, Miri, directly or indirectly, violated, and, unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### RELIEF SOUGHT

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

#### I.

Permanently restraining and enjoining defendant Miri, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

#### II.

Ordering defendant Miri to disgorge, with prejudgment interest, all ill-gotten gains received, as a result of the conduct alleged in this Complaint;

## III.

Ordering defendant Miri to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

## IV.

Barring defendant Miri, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

## V.

Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       November 21, 2013

*Sanjay Wadhwa*
Sanjay Wadhwa
Senior Associate Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0181

Of Counsel:

Joseph Sansone (SansoneJ@sec.gov)
John Henderson (HendersonJ@sec.gov)